*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GREAT LAKES PAIN & INJURY
CHIROPRACTIC CENTER, LIVE WELL
HEALTH LLC, and NORTHLAND RADIOLOGY
INC,

UNPUBLISHED
July 28, 2022

       Plaintiffs-Appellants,

and

WILLIAM JONES,

       Plaintiff,

v

No. 357702
Oakland Circuit Court
LC No. 2020-183350-NF

FARM BUREAU MUTUAL INSURANCE
COMPANY OF MICHIGAN,

       Defendant-Appellee.

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

In this action claiming no-fault benefits through the Michigan Assigned Claims Plan (MACP), see MCL 500.3171 *et seq.*, plaintiffs Great Lakes Pain & Injury Chiropractic Center, Live Well Health LLC, and Northland Radiology, Inc appeal by right the trial court order granting summary disposition under MCR 2.116(C)(10) to defendant Farm Bureau Mutual Insurance Company of Michigan. For the reasons stated in this opinion, we reverse and remand for further proceedings.

## I. BASIC FACTS

On May 19, 2020, William Jones, a passenger in his friend's vehicle, was injured in a motor vehicle crash. Neither Jones nor his friend had auto insurance, and the driver of the other vehicle was not located. On June 17, 2020, Jones filed an application for no-fault benefits with the

Michigan Automobile Insurance Placement Facility (MAIPF). On July 1, 2020, he assigned his right to the payment of personal protection insurance (PIP) benefits to plaintiffs.

On September 9, 2020, plaintiffs filed a claim against the MAIPF and the MACP, alleging that Jones was entitled to PIP benefits and that, contrary to their statutory duties, the MAIPF and the MACP had failed to make an initial determination as to Jones's eligibility for benefits and had failed to promptly assign the claim to a servicing insurer.

While the case was pending, the MAIPF/MACP attempted to question the drivers of both vehicles that were involved in the crash, but they were only able to locate Jones's friend. Subsequently, on October 12, 2020, Jones's friend underwent an examination under oath (EUO). Thereafter, on October 22, 2020, the MACP assigned Jones's claim to Farm Bureau. By stipulation, Farm Bureau was substituted for the MAIPF and the MACP, and plaintiffs filed an amended complaint against Farm Bureau on December 3, 2020. Plaintiffs alleged that Jones had incurred the following expenses: $5,065 with plaintiff Great Lakes, $2,300 with plaintiff Live Well, and $48,475 with plaintiff Northland. They contended that they timely submitted billings to Farm Bureau for the medical services rendered to Jones and had provided Farm Bureau with reasonable proof of loss, but that Farm Bureau had made only partial payments or had unreasonably refused or delayed in making payment for the medical services.

Subsequently, Farm Bureau subpoenaed Jones for a deposition scheduled for February 2, 2021, and for a defense medical examination (DME)[1] scheduled for February 3, 2021. In a letter accompanying the subpoena for a DME, Jones was advised that his failure to appear at the examination "may be construed as a failure to cooperate under the Michigan Assigned Claims Plan, which may form an independent basis upon which to deny your claim for no-fault benefits." Jones did not appear for either his deposition or the DME, and he did not request that either be rescheduled for a different date, time, or location. Moreover, when Farm Bureau's investigator contacted Jones, Jones was uncooperative and informed the investigator that he no longer desired to pursue a claim for PIP benefits.[2]

The trial court granted Farm Bureau's motion to show cause and ordered Jones to appear on March 10, 2021 to show cause for why he should not be held in contempt for failing to appear for his deposition and for a DME. After the hearing, the court entered an order requiring Jones to appear for a deposition scheduled for April 12, 2021 and a DME scheduled for April 21, 2021,

---

[1] Although Farm Bureau refers to the examination as an "independent" medical examination, this opinion will refer to it as a defense medical examination because it is an examination requested by the defense that is conducted by a medical examiner selected by the defense. See *Muci v State Farm Mut Auto Ins Co*, 478 Mich 178, 182; 732 NW2d 88 (2007) (stating that a medical examination requested by the defense is "customarily referred to as a defense medical examination or a DME.").

[2] A Farm Bureau investigator stated that he had contacted Jones and Jones "advised that the owner of the involved vehicle is a friend of his and that he does not want to pursue any further with this first-party claim with the MACP" and that "he did not want to provide a statement to the investigator and wanted the claim to be dropped."

both of which had been noticed by Farm Bureau. In the meantime, on February 12, 2021, Farm Bureau denied Jones's claim for benefits based upon his failure to cooperate with its investigation and his statement to an investigator that he no longer desired to pursue a claim for PIP benefits.

After Jones failed to appear for the re-scheduled deposition and DME, Farm Bureau filed a motion for summary disposition under MCR 2.116(C)(10), which was granted by the trial court.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Plaintiffs argue that the trial court erred by granting summary disposition. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Issues of statutory interpretation are also reviewed de novo. *Spectrum Health Hosps v Mich Assigned Claims Plan*, 330 Mich App 21, 31; 944 NW2d 412 (2019). "The primary goal of statutory interpretation is to discern the intent of the Legislature." *Id*. "The best indicator of the Legislature's intent is a plain reading of the statutory language." *Id*. "If the statutory language is unambiguous, we presume that the Legislature intended the meaning that it clearly expressed, and further construction is neither required nor permitted." *Id*. (quotation marks and citation omitted). Instead, "the statute is enforced as written." *Halloran v Bhan*, 470 Mich 572, 577; 683 NW2d 129 (2004) (quotation marks and citation omitted).

### B. ANALYSIS

Plaintiffs first argue that resolution of this matter is governed by this Court's decision in *Spectrum Health Hosps*, 330 Mich App 21. In that case, the MAIPF denied as ineligible for assignment under the MACP[3] in part because, contrary to the procedure stated in the MACP, the application was not signed by either the claimant or a representative of the claimant. *Spectrum Health Hosps*, 330 Mich App at 28-29. Interpreting a prior version of MCL 500.3173a,[4] this Court held that the MAIPF could only deny "obviously ineligible" claims and that "[e]ligibility is determined by the conditions outlined in MCL 500.3172(1) . . . ." *Id*. at 38-39. As a result, the MAIPF could not rely on provisions in the MACP to deny an application for benefits that satisfied the eligibility criterion set forth by statute. *Id*. at 39-40. The Court noted instead that, the MAIPF "could request that the claimant amend the notice to comply with its form application to make its tasks more manageable, but it could not declare the claim to be obviously ineligible based on a minor nonconformity." *Id*. at 39.

---

[3] MCL 500.3171(3) authorizes the MAIPF to adopt an assigned claims plan. The assigned claims plan adopted by the MAIPF is available at <https://www.michacp.org/documents/MACP-Plan-of-Ops.pdf> (accessed June 22, 2022).

[4] See 2012 PA 204.

The holding in *Spectrum*, however, has been superseded by the current version of MCL 500.3173a(1), which mandates that the MAIPF "shall review a claim for personal protection insurance benefits under the assigned claims plan, shall make an initial determination of the eligibility for benefits under this chapter and the assigned claims plan, and shall deny a claim that the Michigan automobile insurance placement facility determines is ineligible under this chapter or the assigned claims plan." By requiring the initial determination of the eligibility for benefits to be determined by reference to both "this chapter and the assigned claim plan," and by requiring the MAIPF to deny claims that are ineligible under "this chapter or the assigned claims plan," the Legislature has expanded the eligibility criteria to include both statutory provisions set forth in the no-fault act and provisions that may be stated in the MACP. Plaintiffs reliance on *Spectrum*, therefore, is misplaced.

Plaintiffs also assert that the MAIPF completed its investigation and assigned the claim to Farm Bureau, so eligibility has already been determined in this case. However, plaintiffs' argument that the assignment of the claim indicates that eligibility must have been determined is contrary to MCL 500.3173a(3), which provides that the assignment of a claim by the MAIPF to an insurer "is not a determination of eligibility under this chapter or the assigned claims plan . . . ."

Plaintiffs next argue that a servicing insurer, such as Farm Bureau, may not deny a claim based on a claimant's failure to cooperate under MCL 500.3173a(2). We disagree with plaintiffs' interpretation of MCL 500.3173a. MCL 500.3173a(2) provides:

> (2) A claimant or a person making a claim through or on behalf of a claimant shall cooperate with the Michigan automobile insurance placement facility in its determination of eligibility and the settlement or defense of any claim or suit, including, but not limited to, submitting to an examination under oath and compliance with sections 3151 to 3153. There is a rebuttable presumption that a person has satisfied the duty to cooperate under this section if all of the following apply:

> (a) The person submitted a claim for personal protection insurance benefits under the assigned claims plan by submitting to the Michigan automobile insurance placement facility a complete application on a form provided by the Michigan automobile insurance placement facility in accordance with the assigned claims plan.

> (b) The person provided reasonable proof of loss under the assigned claims plan as described in section 3172.

> (c) If required under this subsection to submit to an examination under oath, the person submitted to the examination, subject to all of the following:

> (*i*) The person was provided at least 21 days' notice of the examination.

> (*ii*) The examination was conducted in a location reasonably convenient for the person.

(*iii*) Any reasonable request by the person to reschedule the date, time, or location of the examination was accommodated.

The language in the first sentence requires cooperation with the MAIPF, but does not indicate that cooperation with a servicing insurer is also mandatory. However, when interpreting a statute, "statutory provisions are *not* to be read in isolation; rather, context matters, and thus statutory provisions are to be read as a whole." *Robinson v City of Lansing*, 486 Mich 1, 15, 782 NW2d 171 (2010). Plaintiffs' interpretation requires this Court to overlook that, under MCL 500.3173a(3), the MAIPF "may perform its functions and responsibilities under this section and the assigned claims plan directly *or through an insurer assigned* by the [MAIPF] to administer the claim on behalf of the [MAIPF]." (Emphasis added). We conclude that, reading the statute as a whole, the duty to cooperate stated in subsection (2) requires a claimant or an individual making a claim through or on behalf of a claimant to cooperate with the servicing insurer when that insurer is indirectly carrying out the MAIPF's functions and responsibilities.

Here, it is undisputed that Jones did not cooperate with Farm Bureau's investigation of his claim. Despite being subpoenaed for a deposition and a DME, he appeared for neither and made no efforts to reschedule the time, date, or location of either. Moreover, he told a Farm Bureau investigator that he did not wish to pursue his claim for PIP benefits. On appeal, plaintiffs argue that the presumption of cooperation stated in MCL 500.3173a(2) arises in this case. But the presumption created under MCL 500.3173a(2) is a *rebuttable* presumption. On this record, in light of the unrefuted evidence that Jones declined to cooperate with Farm Bureau's investigation, the presumption has been rebutted.[5]

That does not end our inquiry, however. MCL 500.3173a(1) addresses the consequences of a claimant's failure to cooperate under subsection (2). In pertinent part, it provides:

If a claimant or person making a claim through or on behalf of a claimant fails to cooperate with the Michigan automobile insurance placement facility as required by subsection (2), the Michigan automobile insurance placement facility *shall suspend benefits* to the claimant under the assigned claims plan. A suspension under this subsection is not an irrevocable denial of benefits, and must continue only until the Michigan automobile insurance placement facility determines that the claimant or person making a claim through or on behalf of a claimant cooperates or resumes cooperation with the Michigan automobile insurance placement facility. [Emphasis added.]

The suspension of benefits is separate and distinct from the denial of a claim. In the first sentence of MCL 500.3173a(1), the Legislature mandates that the MAIPF "deny a claim that the [MAIPF] determines is ineligible under this chapter or the assigned claims plan." In the third sentence, the

---

[5] Farm Bureau suggests that the presumption does not arise in this case because Jones did not submit to an EUO under MCL 500.3173a(2)(c). Yet, Jones was subpoenaed for a deposition and a DME, not an EUO. Therefore, as no EUO was required, the presumption is not defeated by Jones's failure to appear for an EUO.

Legislature mandates that the MAIPF "promptly notify in writing the claimant and any person that submitted a claim through or on behalf of a claimant of a denial and the reasons for the denial." *Id*. But the second sentence only permits the MAIPF to *suspend benefits* if a claimant fails to cooperate under MCL 500.3173a(2) and the suspension of benefits may only continue until the MAIPF determines that the claimant "cooperates or resumes cooperation." See also *Roberts v Farmers Ins Exch*, 275 Mich App 58, 68-69; 737 NW2d 332 (2000) (indicating that it is proper for an insurer to suspend benefits if a claimant repeatedly fails to comply with his or her statutory duty to submit to medical examinations). Here, rather than suspend Jones's benefits, Farm Bureau sent a letter denying his claim. Because that sanction for failure to cooperate is contrary to the statutory language, the denial was improper. Moreover, because Jones's claim was improperly denied, the trial court erred by granting summary disposition under MCR 2.116(C)(10).[6]

Reversed and remanded for further proceedings. No taxable costs are awarded. MCR 7.219(A). We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

---

[6] Here, although the motion to dismiss was brought and granted based on Jones' failure to cooperate under MCL 500.3173a(2), there may be other grounds for dismissal in this case. See *Dean v Tucker*, 182 Mich App 27, 32; 451 NW2d 571 (1990) (recognizing that a court has discretion to dismiss a claim as a sanction for failing to comply with discovery).